IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| CHARLTON EARLE JENNINGS | : | |
| | : | |
| Plaintiff | : | C.A. No. 02 -210 Erie |
| | : | |
| vs. | : | JUDGE COHILL |
| | : | |
| ERIE COUNTY DISTRICT ATTORNEY'S | : | |
| OFFICE, DISTRICT ATTORNEY BRAD FOULK | : | |
| ERIE POLICE DEPARTMENT | : | |
| EX-EPD CHIEF PAUL DeDIONISIO | : | |
| Defendants | : | |

**BRIEF IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT
IN BEHALF OF DEFENDANT PAUL DEDIONISIO**

**FACTS AND PROCEDURAL HISTORY**

This action, together with litigation at Nos. 209 and 210 of 2002 were filed by Plaintiff and his mother, Irma R. Graves, on July 8, 2002, in relation to events of July 7, 2000, during which Plaintiff had engaged in a gun battle with Erie police officers. Plaintiff's complaint portrays this as a case of "racial profiling" in the form of a traffic stop, but fails to note facts established at his subsequent criminal trial regarding his choice to run away, attack and shoot one officer (Jay White) in the leg, and finally to fire several bullets into another officer (Terry Dawley) before his capture, for which he was convicted of Attempted Murder, Aggravated Assault, Reckless Endangerment, Resisting Arrest and other charges.

Two other actions, at Nos. 195 and 196 of 2002 were filed directly by Plaintiff against Officers Dawley and Fetterman, and have been consolidated for trial on limited issues; other claims having been dismissed on Summary Judgment motions. In this

action, Plaintiff's mother was dismissed as a Plaintiff as she was from the other dockets because she had no standing to complain in her son's behalf. Those other actions have most recently been dismissed entirely on Summary Judgment motions.

**ARGUMENT**

**PLAINTIFF HAS MADE FEW ALLEGATIONS AND HAS NO EVIDENCE TO SUPPORT HIS CLAIMS AGAINST DEFENDANT DEDIONISIO, AND HE SHOULD BE DISMISSED FROM THIS CASE FOR THE SAME REASONS HE WAS DISMISSED FROM C.A. NO. 02-211.**

Summary Judgment is available under Rule 56 if the moving party can show that there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. Evidence must be viewed in the light most favorable to the non-movant, resolving conflicts in the non-movant's favor–*Big Apple BMW Inc. v. BMW of North Americal Inc.* 974 F. 2d 1358 (3rd Cir. 1992), *cert denied* 507 U.S. 912 (1993). Once the moving party demonstrates the absence of material fact, the non-movant, particularly one with the burden of proof at trial, must move beyond his pleadings to "make a showing sufficient to establish the existence of every element essential to his case, based on the affidavits or by depositions and admissions on file." *Harter v. GAF Corp;* 967 F. 2d 846 (3rd Cir. 1992); *Anderson v. Liberty Lobby Inc.* 477 U.S. 242, (1986).

In this action, Plaintiff has included former Police Chief Paul DeDionisio, and the Erie Police Department. DeDionisio took no direct action in the traffic stop, pursuit, gun battle, medical treatment or arrest of the Plaintiff, nor does Plaintiff even allege that he did. He simply asserts in his Amended Complaint that DeDionisio's alleged failure to call in the SWAT team to apprehend Plaintiff, as set forth in an internal Critical Incident Review generated by police officer complaints, somehow bodes well for Plaintiff, despite the fact that all criticism of DeDionisio and other command officers was centered on

insufficient, rather than excessive force directed toward Plaintiff!.

Even if this broad, cryptic allegation of supervisory negligence somehow establishes the required nexus with Plaintiff's alleged federal rights violations to comply with the pleading standard for a *pro se* civil rights action under 42 U.S.C. 1983, it must now be examined for Summary Judgment purposes to determine if anything at all supports his attempt to impose municipal or supervisory liability, in light, moreover, of the facts legally established regarding the July 7, 2000 incident (Appendix Pt. 1). Plaintiff is a convicted violent criminal as a result of the subject incident (App. Pt. 2), his assertions of racial profiling and other alleged justifications or mitigations of his actions having been rejected by the jury, the judge and the Superior Court of Pennsylvania on appeal (App. Pt. 6).

The testimony of defendant Donald Knepper (whom Plaintiff identifies as "Kneeper") at Plaintiff's criminal trial on March 20, 2001, (App. Pt. 3, pp. 51, 56-92) clearly establish the picture of his having been stopped for non-working taillights, the subsequent false identification he provided, the view of suspected marijuana in the vehicle, his flight, pursuit by Patrolman Jay White, and the shooting of White by Plaintiff.

The testimony of H.G. Strickland (App. Pt. 4, pp. 122-136 ) at Plaintiff's criminal trial establishes the promptness of medical treatment and ambulance transport he received. Inspector Strickland was at the scene during the shooting of Dawley and testified that Plaintiff was treated in the field along with the injured officers and that an ambulance was promptly called for him as well (pages 133-136, 150-152).

The testimony of John Lubhan, MD (App. Pt. 5, pp154-160) also confirms the

time of Plaintiff's entry into St. Vincent Hospital as approximately 5:41 am, less than an hour after the shooting incident; and also describes the medical necessity of removing some of the bullet fragments from Plaintiff while leaving smaller fragments which would have been more difficult to remove without corresponding benefit.

In none of these events was Chief DeDionisio directly involved; nor was anything done or withheld in a manner which violated Plaintiff's federally-guaranteed rights. Even if any such right had been violated, no City of Erie policy, custom or practice has been identified or established to prove intentional violation or deliberate indifference.

Plaintiff has not produced any testimony or evidence to support his bald assertion of having been subjected to racial profiling or any type of unlawful conduct by the police in stopping his vehicle. He has presented no evidence of any wrongful conduct whatsoever by defendant DeDionisio and relies on his own distorted allegations of the facts determined by the jury.

The law determined by the Supreme Court regarding municipal and supervisory liability for the unconstitutional acts of subordinates may be summarized thusly: Generally, there is no *respondeat superior* liability simply because of the employment relationship-*Monell v. Dept of Social Services* 436 U.S. 658 (1978).  In most circumstances, if the individual officer is found not liable for damages on qualified immunity grounds, the policymakers and municipality must also be absolved from liability for having caused or tolerated the particular actions found not to impose individual liability *Los Angeles v. Heller* 475 U.S. 796 (1986).

In situations where the individual officer is liable to the plaintiff for federal rights violations, the Court has required that there be a very clear, causal relationship between

the unconstitutional act and the decision of a policymaker, or custom, policy or practice of the municipality to impose municipal liability–*City of Canton v. Harris* 489 U.S. 378 (1989); *Pembaur v. Cincinnati* 475 U.S. 469 (1986); *St. Louis v. Praprotnik* 485 U.S. 112 (1988). A municipality's liability under 42 U.S.C. 1981 may not be broader than its liability under Section 1983 *Jett v. Dallas Independent School District* 491 U.S. 701 (1989).

Here, Plaintiff has neither asserted nor can he prove any causal relationship between the allegedly unconstitutional act of stopping his vehicle on a "racial profiling" basis and the decision, custom, policy or practice of Chief DeDionisio or the City of Erie Police Department. Furthermore, given that his premise of the unconstitutionality of his stop and pursuit was rejected by the criminal court jury and the Superior Court on appeal, he seeks to undermine the convictions by a collateral civil attack through the Civil Rights Act, 42 U.S.C. 1983, which the Supreme Court has determined to be impermissible— *Heck v. Humphrey* 512 U.S. 477 (1994).

Plaintiff's own naked assertion of "racial profiling" is not sufficient to reach trial, given the showing by the defendants establishing the absence of any evidence of the material facts necessary to support his claims.

**CONCLUSION**

      Defendant DeDionisio is entitled to Summary Judgment as a matter of law and should be dismissed from this action.

                                    Respectfully Submitted

                                    OFFICE OF ERIE CITY SOLICITOR

                                    By:<u>s:/Gerald J. Villella, Esq.</u>
                                        Gerald J. Villella, Esq. PA ID 32814
                                        626 State Street, Room 505
                                        Erie, PA 16501
                                        (814) 870-1235